IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GREEN BUILDING INITIATIVE, INC.**, an Oregon non-profit corporation,<br><br>        Plaintiff,<br><br>        v.<br><br>**STEVEN R. PEACOCK**, an individual residing in California; **GREEN GLOBE LIMITED**, a company of the United Kingdom; **GREEN CERTIFICATIONS, INC.**, a California corporation; and **DOES 1-10**, inclusive,<br><br>        Defendants. | Case No. 3:24-cv-298-SI<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

Plaintiff Green Building Initiative, Inc. sues Defendants Stephen Peacock,[1] Green Globe Limited, and Green Certifications, Inc. ("GCI") for trademark infringement, unfair competition, breach of contract, and unfair and deceptive trade practices. GCI moves to dismiss Plaintiff's complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. For the reasons below, the Court grants in part GCI's motion. The Court will sever Plaintiff's claims against GCI and transfer those claims to the United States District Court for the District of California. Plaintiff's claims against the other Defendants will remain in the District of Oregon.

---

[1] Peacock was, at all relevant times, a shareholder, member of the Board of Directors, and the Chief Executive Officer of Green Globe International, Inc. Compl. (ECF 1) ¶ 29.

PAGE 1 – ORDER

## STANDARDS

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When resolving such a motion on written materials, rather than after an evidentiary hearing, a court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id*. (cleaned up). Although a plaintiff may not rest solely on "the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Id*. (cleaned up). In addition, conflicts between the parties over statements in affidavits must be resolved in the plaintiff's favor. *Id.*

## BACKGROUND

Plaintiff is an international 501(c)(3) nonprofit organization headquartered in Portland, Oregon. Compl. (ECF 1) ¶¶ 1-2. Founded in 2004, Plaintiff provides non-downloadable software for evaluating, rating, comparing, certifying, and improving the efficiency, sustainability, and environmental performance of buildings. *Id.* ¶¶ 2, 22. It owns two U.S. service mark registrations ("the GREEN GLOBES® Marks"). *Id.* ¶ 3. The U.S. Environmental Protection Agency has endorsed Plaintiff's services, and the U.S. General Services Administration recognizes Plaintiff as one of only five building certification systems "most likely to encourage a comprehensive and environmentally sound approach to certification of high-performance buildings." *Id.* ¶ 24. Over the last 20 years, more than 635,000,000 square feet of building space has received the GREEN GLOBES® certification. *Id.* ¶ 27. Plaintiff and its brand have also received recognition in state legislation across the country as an approved sustainable building assessment and certification system. *Id.* ¶ 27.

Plaintiff alleges that in 2009, it discovered that Green Globe International, Inc. ("Green Globe")[2] offered and provided to the public assessment and certifications systems to evaluate the environmental sustainability of buildings. *Id.* ¶ 5. Plaintiff alleges that Green Globe conducted its business under the "substantially identical, unregistered service mark, GREEN GLOBE." *Id.* In 2009, Plaintiff sued Green Globe in the District of Oregon, Case No. 3:09-cv-1167-KI, alleging infringement of the GREEN GLOBES® Marks and related claims for violations of the Lanham Act, false designation, false advertising, unfair competition, and intentional interference with prospective business relations. *Id.* ¶ 6. On November 22, 2010, Plaintiff and Green Globe settled that action. *Id.* ¶ 7. On November 29th, Plaintiff and Green Globe signed a consent decree and the Court entered judgment. *Id.*

On February 14, 2024, Plaintiff brought a new lawsuit—the present action—against Defendants. Plaintiff alleges that Green Globe, in collaboration with the other Defendants, violated the settlement and consent decree in a variety of ways. *Id.* ¶¶ 8-11.[3] Plaintiff brings claims of federal trademark infringement and federal unfair competition against Defendants. Plaintiff

---

[2] Green Globe was originally a defendant in this case. By stipulation, the Court dismissed without prejudice Green Globe (ECF 43).

[3] For example, on July 27, 2023, Plaintiff alleges that it discovered that GCI was marketing its services as certification for "sustainable operation and management of hotels, resorts, conference centres, and attractions," in violation of the consent decree. *Id.* ¶¶ 9, 30. GCI marketed its services under the GREEN GLOBE mark. *Id.* ¶ 9. Plaintiff alleges that one of its customers expressed confusion between the services offered by Plaintiff under the GREEN GLOBES® Mark and the mark offered by GCI. *Id.* Plaintiff further alleges that Defendants have offered in the United States a "net zero" program under the GREEN GLOBE mark in direct competition with Plaintiff's GREEN GLOBES® "net zero" program. *Id.* ¶ 10(a). Defendants also allegedly failed to include language on their website related to the lawsuit and transfer to Plaintiff certain website URLs as mandated by the agreement. *Id.* ¶ 10(c). Finally, Plaintiff alleges that GCI has used and continues to use the infringing GREEN GLOBE mark in the United States in connection with services in competition with Plaintiff. *Id.* ¶ 33. Plaintiff asserts that Defendants' use of Defendants' mark in conjunction with Defendants' directly competing services not only violated the settlement agreement and consent decree, but also caused client confusion and misinformed the public regarding the source and affiliation of Defendants' competing services. *Id.* ¶ 11.

PAGE 3 – ORDER

seeks an injunction prohibiting Defendants from using the GREEN GLOBES® Mark or any imitations, reproductions, or names that are confusingly similar. Plaintiff requests that Defendants be ordered to cease offering for sale, marketing, promoting, and selling, and to remove from circulation, all services bearing a confusingly similar imitation of the GREEN GLOBES® Mark. Plaintiff also seeks compensatory and punitive damages, legal costs, and attorney's fees. Before the Court is Defendant GCI's motion to dismiss (ECF 20).[4] GCI argues that the Court should dismiss this lawsuit under Rule 12(b)(2) for lack of personal jurisdiction.

## DISCUSSION

### A. Applicable Law

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (citing Fed. R. Civ. P. 4(k)(1)(A)). Oregon's long-arm statute is co-extensive with constitutional standards. *Capsugel Belgium NV v. Bright Pharma Caps, Inc.*, 2015 WL 7185463, at *2 (D. Or. Nov. 13, 2015) (citing Or. R. Civ. P. 4(L)). Thus, the Court need only determine whether its exercise of personal jurisdiction over GCI would offend constitutional due process requirements. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008); *see also State, ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 384 (1982).

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v.*

---

[4] The other remaining defendants do not join this motion. Defendants Peacock and Green Globe Limited answered Plaintiff's complaint and filed counterclaims on January 17, 2025 (ECF 55). Plaintiffs note that because of Peacock and Green Globe Limited's delayed response, the parties have not yet conducted a conference pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.

PAGE 4 – ORDER

*Meyer*, 311 U.S. 457, 463 (1940)). The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Id*. at 319; *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, a court should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016. A court has general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systematic" even if those contacts are wholly unrelated to the plaintiff's claims. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable. *See Burger King*, 471 U.S. at 472-77. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 287 (2014)). This means that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. 284 (emphasis in original) (quoting *Burger King*, 471 U.S. at 475). The analysis also must look the defendant's contacts with the forum state, and not with persons who reside there. *Id.* at 285.

The Ninth Circuit applies a three-part test, commonly referred to as the minimum contacts test, to determine if the exercise of specific jurisdiction over a nonresident defendant is appropriate:

>  (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
>  (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
>  (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden of satisfying the first two prongs. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If a plaintiff does that, the burden of satisfying the third prong then shifts to the defendant to present a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802). "Generally, '[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test].'" *Freestream Aircraft*, 905 F.3d at 603 (alterations in original) (quoting *Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)).

The first prong embodies two distinct, although sometimes conflated, concepts: purposeful availment and purposeful direction. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). The purposeful direction test, often called the "effects" test, derives from *Calder v. Jones*, 465 U.S. 783 (1984). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (citations omitted). The key, however, is where the allegedly wrongful conduct took place. *Freestream Aircraft*, 905 F.3d at 604-06. For tortious conduct that takes place within the forum state, the purposeful availment test under *Paccar* is appropriate,

PAGE 6 – ORDER

while the purposeful direction analysis is appropriate for tortious conduct that takes place outside the forum state but has an effect within the forum state. *Id.* ("Read together, those statements comparing within-forum-state versus out-of-forum-state conduct, and contract versus tort actions, suggest that a purposeful direction analysis naturally applies in suits sounding in tort where the tort was committed outside the forum state. . . . This review of the history of the effects doctrine and its place in our jurisprudence makes clear that *Paccar*, not *Calder*, is the proper starting place where an intentional tort is committed within the forum state. *Paccar* was rooted in the well-settled understanding that the commission of a tort within the forum state usually supports the exercise of personal jurisdiction. . . . The effects doctrine, on the other hand, makes more sense when dealing with out-of-forum tortfeasors."). Because Plaintiff's trademark infringement claims arise in tort, the Court applies the purposeful direction analysis. *See* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 2:7 (5th ed. 2025) (characterizing trademark infringement as a commercial tort).

## B.  Analysis

### 1.  Personal Jurisdiction and Jurisdictional Discovery

First, GCI asserts that the Court does not have general personal jurisdiction over GCI because its contacts with Oregon are not so "continuous and systematic" as to render it essentially at home in Oregon. Plaintiff does not dispute this argument. The Court agrees with GCI's position. GCI is incorporated in Los Angeles, California and has had its principal place of business first in Los Angeles and now in Santa Monica, California. *See* Decl. of Guido Bauer, ¶ 3 (ECF 21 at 2). There is no allegation or evidence to suggest that GCI's contacts are sufficiently continuous and systematic to establish general personal jurisdiction.

The Court turns next to the issue of specific personal jurisdiction. Under the three-part effects test, for purposeful direction "the defendant allegedly must have (1) committed an

PAGE 7 – ORDER

intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (per curiam) (cleaned up). GCI argues that Plaintiff has not met its burden with respect to all three parts of the test. Plaintiff does not dispute that it has failed to meet each part of the test for purposeful direction. On its own review, the Court agrees with GCI; there is no evidence that GCI has expressly aimed any intentional act at the State of Oregon. GCI does not have a physical presence in Oregon, is not registered to conduct business in Oregon, and has no registered agents, employees, or salespersons in Oregon. *See* Decl. of Guido Bauer, ¶¶ 4-5. GCI's personnel have never traveled to Oregon for business purposes, nor has GCI performed any certification services at properties located in Oregon. *Id.* ¶¶ 6-7. GCI has not knowingly sold any of its services to Oregon, derived profits from this State, or paid taxes to this State. *Id.* ¶ 11. Based on its online records, no Oregon-based entity has ever filled out a sign-up form for certification on GCI's website. *Id.* ¶ 12. GCI does not direct targeted advertisements to Oregon. *Id.* ¶ 13. Plaintiff offers no evidence to challenge any of these assertions. The Court finds that Plaintiff has failed to meet its burden, and that the Court has neither general nor specific personal jurisdiction over GCI.

      Plaintiff responds that upon information and belief, Plaintiff reasonably believes that GCI entered into a contract and license ("License Agreement") with Green Globe to use the GREEN GLOBES mark and that accordingly, GCI subjected itself to the rights and responsibilities of Green Globe under the settlement agreement and consent decree. Plaintiff argues that the nature of the License Agreement could "intertwine" Green Globe and GCI such that they would *both* be bound by a forum-selection clause—presumably in the settlement agreement or consent decree—between Plaintiff and Green Globe. Plaintiff explains that for that reason, it served on GCI

PAGE 8 – ORDER

additional discovery in January 2025 so it could determine whether GCI has bound itself to the jurisdiction of Oregon through an agreement with Green Globe. Plaintiff argues that this discovery could show that (1) GCI is bound by the forum selection clause or (2) GCI has sufficient minimum contacts with Oregon. Thus, Plaintiff requests that the Court deny GCI's motion to dismiss and allow Plaintiff to complete this limited jurisdictional discovery. GCI counters that Plaintiff had months of time—during which the parties stipulated to conduct limited discovery—to seek answers to its questions about the contract and license, and any other jurisdictional issues. Plaintiff argues that it has only recently issued jurisdictional discovery because it has been focused on settlement negotiations with all Defendants. GCI counters in relevant part that on June 21, 2024, it *provided* to Plaintiff, for "Attorneys' Eyes Only" review, the License Agreement between Green Globe and GCI. *See* Decl. of Catherine Anne Allen ¶ 2 (ECF 59 at 2).

Jurisdictional discovery "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (quoting *Butcher's Union Loc. No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986)). A court may grant jurisdictional discovery if the request is based on more than a "hunch that it might yield jurisdictionally relevant facts," *Boschetto*, 539 F.3d at 1020, or more than "bare allegations in the face of specific denials," *Terracom v. Valley National Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (quotation marks omitted).

As noted above, counsel for GCI provided to Plaintiff the License Agreement for "Attorney's Eyes Only" review in June 2024. Decl. of Catherine Anne Allen ¶ 2 . Plaintiff alludes to the License Agreement in its response, stating only:

> [B]ased on the evidence demonstrated in the declaration of [Thomas J.] Speiss[, III], reasonable information suggests that GCI and

PAGE 9 – ORDER

> [Green Globe] are so contractually intertwined such that Plaintiff believes GCI may have undertaken all of [Green Globe's] liabilities, including assuming [Green Globe's] responsibilities under its earlier settlement that conferred jurisdiction in the District of Oregon.

ECF 53 at 3-4. Plaintiff does not cite any particular provision in the License Agreement to support its position that GCI and Green Globe are "contractually intertwined." Plaintiff also does not explain in its response—nor does Mr. Speiss in his declaration, ECF 53—what kind of discovery it is seeking, and how, if at all, that discovery would be helpful. Plaintiff alludes vaguely to documentation (beyond the License Agreement) from GCI denying that it assumed any of Green Globe's liabilities.[5] Without any support, especially from the License Agreement, upon which Plaintiff rests its personal jurisdiction argument, Plaintiff has not demonstrated to the Court that its request goes beyond a "hunch." Thus, Plaintiff's request for jurisdictional discovery is founded on insufficient supporting evidence, and the Court denies Plaintiff's request.[6]

### 2. Transfer

As an alternative to dismissal, Plaintiff requests that the Court sever GCI and transfer Plaintiff's claims against GCI to the United States District Court for the Central District of California, where GCI resides. GCI does not object.

---

[5] In the alternative, Plaintiff states that jurisdictional discovery of "GCI's network of service providers, clients, and subscribers" may reveal sufficient minimum contacts with Oregon. This request is similarly nonspecific and is not founded on anything beyond a mere hunch that GCI does business in Oregon.

[6] Moreover, the Court observes that Plaintiff had months to seek jurisdictional discovery before it finally filed a request in January 2025. GCI filed its motion in June 2024. In September 2024, Plaintiff sought discovery from GCI. *See* Decl. of Catherine Anne Allen ¶ 4. Plaintiff did not, at that time, request the items that it sought in January 2025. *Id*. Plaintiff states in its brief that it did not seek jurisdictional discovery during those months because it had been focused on settlement negotiations with all Defendants and did not want to make the process more contentious. It is not clear to the Court how seeking jurisdictional discovery in September 2024 would have caused more friction in a potential settlement than the other discovery that Plaintiff actually sought.

If, as here, a district court determines that venue is inappropriate, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a)[7]; *see also Wood v. Santa Barbara Chamber of Com., Inc.,* 705 F.2d 1515, 1523 (9th Cir. 1983) (noting that 28 U.S.C. § 1406(a) may be used to transfer actions "to cure [a] lack of personal jurisdiction" (citing *Goldlawr v. Heiman,* 369 U.S. 463, 466 (1962))). Under the general venue statute, venue may be found in three circumstances: (1) in "a judicial district in which any defendant resides"; (2) in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) otherwise, "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." *See* 28 U.S.C. § 1391(b). A defendant-corporation is "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *See* 28 U.S.C. § 1391(c)(2).

In this case, the parties agree that GCI is subject to personal jurisdiction in the Central District of California. The Court agrees. GCI's State of incorporation of is California and its principal place of business is Santa Monica. Thus, the Central District has general personal jurisdiction over GCI, which in turn satisfies both the first and third pathways to establishing venue as provided in 28 U.S.C. § 1391(b).

The Court next finds that it would be in the interest of justice to transfer Plaintiff's claims against GCI instead of dismissing them. To determine whether transfer is "in the interests of justice," courts will generally consider judicial economy, the relative injustice imposed on the

---

[7] Personal jurisdiction over a defendant is not required for a court to order a transfer under § 1406(a). 28 U.S.C. § 1631; *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962).

plaintiff and defendant, whether the statute of limitations has expired, and whether the action would be re-filed if the case were dismissed. *Grain Millers, Inc. v. Pac. Flexpak, Co.,* 2008 WL 550124, at *2 (D. Or. Feb. 26, 2008); *see also Citizens for a Better Env't–Cal. v. Union Oil Co. of Cal.,* 861 F. Supp. 889, 898 (N.D. Cal. 1994) *aff'd,* 83 F.3d 1111 (9th Cir. 1996). In this case, both parties consent to transfer and neither party cites any resulting injustice or other significant concerns. Thus, although Plaintiff does not face an explicit statute of limitations problem if this case were dismissed and it was forced to re-file, the Court finds that it would be in the interest of justice to transfer these claims.

## CONCLUSION

For the reasons provided in this Order, the Court GRANTS IN PART and DENIES IN PART GCI's motion to dismiss for lack of personal jurisdiction, ECF 20. The Court finds that it does not have personal jurisdiction over GCI. Instead of dismissing Plaintiff's claims against GCI, the Court severs Plaintiff's claims against GCI from the rest of the case so they may be transferred to a venue that has personal jurisdiction over GCI. The Clerk of the Court is directed to transfer Plaintiff's claims only against GCI to the United States District Court for the Central District of California. Plaintiff's claims against the other Defendants shall remain in the District of Oregon.

**IT IS SO ORDERED**.

DATED this 20th day of March, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge