IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**GREEN BUILDING INITIATIVE, INC.**, an Oregon non-profit corporation,

    Plaintiff,

v.

**STEVEN R. PEACOCK**, an individual residing in California; and **GREEN GLOBE LIMITED**, a company based in the United Kingdom,

    Defendants.

Case No. 3:24-cv-298-SI

**ORDER**

**Michael H. Simon, District Judge.**

    Green Building Initiative, Inc. ("GBI") originally sued Stephen R. Peacock ("Peacock") and Green Global Limited ("GGL") (together, "Defendants"), along with other named and unnamed Defendants.[1] Against Peacock and GGL, GBI alleges trademark infringement, unfair competition, breach of contract, and deceptive trade practices. Defendants have asserted eighteen

---

[1] On October 16, 2024, the Court granted a stipulated dismissal of Defendant Green Globe International. ECF 43. On March 20, 2025, the Court granted in part Defendant Green Certifications, Inc.'s ("Green Certifications") motion to dismiss, severed GBI's claims against Green Certifications from this case, and transferred GBI's claims against Green Certifications to the United States District Court for the Central District of California. ECF 67. Thus, the only named Defendants that remain are Steven Peacock and Green Globe Limited. In this Order, the Court ignores GBI's claims against the Doe Defendants.

PAGE 1 –   ORDER

affirmative defenses and three counterclaims. Now before the Court are three motions made by Plaintiff, GBI. First, pursuant to Oregon Revised Statutes ("ORS") § 31.150, GBI moves to strike Defendants' second and third counterclaims. Second, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, GBI moves to strike Defendants' second, third, fourth, and tenth affirmative defenses. Third, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, GBI moves to dismiss Defendants' first counterclaim. For the reasons provided below, the Court grants GBI's motions.

## STANDARDS

### A. Motions to Strike

A court may strike material under Rule 12(f) that is "redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An "immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being plead[ed]." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 967 (9th Cir. 2014) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). "Impertinent" matters are those "that do not pertain, and are not necessary, to the issues in question." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (quoting *Fantasy, Inc.*, 984 F.2d at 1527). Such pleadings are legally insufficient because they clearly lack merit "under any set of facts the defendant might allege." *Polk v. Legal Recovery L. Offs.*, 291 F.R.D. 485, 489 (S.D. Cal. 2013) (quotation marks omitted).

The purpose of a Rule 12(f) motion is to avoid spending time and money litigating spurious issues. *Whittlestone*, 618 F.3d at 973; *see also Fantasy, Inc*, 984 F.2d at 1527. The disposition of a motion to strike is within the discretion of the district court. *See Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990). "Motions to strike are disfavored and infrequently granted." *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F.

Supp. 2d 1187, 1189 (D. Or. 2008); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." (cleaned up)).

An affirmative defense may be struck if it is insufficient. "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Simmons v. Navajo County*, 609 F.3d 1011, 1023 (9th Cir. 2010) (quoting *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979)), *overruled on other grounds by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). "[T]he 'fair notice' required by the pleadings standards only requires describing the defense in 'general terms.'" *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1274 (3d ed. 1998)).

## B. Motions to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The Court must draw all

reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The Court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND[2]

GGL is a corporation formed under the laws of the United Kingdom and incorporated in 1994. Answer (ECF 55) ¶ 85. In that year, GGL applied for a trademark in the United States of its Green Globe logo, although GGL had abandoned that application by 1996. *Id.* Peacock is an individual and resident of the state of Delaware. *Id.* ¶ 86. He acquired GGL in 2008 and has been the director and controlling shareholder ever since. *Id.* Green Globe International ("GG International") is a Delaware corporation. *Id.* ¶ 93. In 2008, GG International acquired 85

---

[2] The Court previously stated the background of this dispute in an earlier Opinion and Order. *See Green Bldg. Initiative, Inc. v. Peacock*, 2025 WL 871225, at *1-2 (D. Or. Mar. 20, 2025). The facts provided in that background were stated as alleged by GBI. The pending motions, however, concern Defendants' factual allegations, so the Court states the facts as alleged by Defendants.

PAGE 4 – ORDER

...

...

percent of GGL. *Id.* GBI is a non-profit entity incorporated in Oregon with its principal place of business in Oregon. *Id.* ¶ 87.

In 2009, GBI filed a lawsuit against GG International, alleging infringement of several trademarks that GBI had obtained in 2008 ("GREEN GLOBE mark"), violation of the Lanham Act, false designation, false advertising, unfair competition, and intentional interference with prospective business relations. *Id.* ¶ 95. GG International was the only named defendant in that lawsuit. *Id.* ¶ 99. GBI and GG International resolved that lawsuit in 2010, when the parties entered a Consent Decree with the court and signed a settlement agreement ("2010 Settlement Agreement"). *Id.* ¶ 97. Peacock—the president and CEO of GG International at the time—signed the Consent Decree and the 2010 Settlement Agreement on behalf of GG International. *Id.* ¶¶ 7 (conceding GBI's allegation that Peacock was the then-president and CEO), ¶¶ 99-100. GGL and Peacock in his personal capacity were not signatories to either document. *Id.* ¶ 100. These agreements significantly limited the use of the GREEN GLOBE mark in the United States and required, among other things, certain disclosures to avoid confusion with GBI's GREEN GLOBES marks. *Id.* ¶ 101. In 2014, Peacock resigned as president and CEO of GG International. *Id.* ¶ 102. In 2018, GG International sold GGL back to Peacock. *Id.* ¶ 103. The terms of this sale were described in GG International's Annual Report that year. *Id.* ¶ 105.

On February 14, 2024, Plaintiff, GBI, brought a new lawsuit—the present action—against Defendants. *See* ECF 1 ¶¶ 8-11. Based on the Annual Report, Defendants allege that when GBI filed its complaint in this lawsuit, it knew or should have known that Defendants no longer held "any position of control" with GG International and that GGL "was no longer doing any business in the United States directly or through its licensee Green Certifications, Inc."

ECF 55 ¶ 107. Defendants assert three counterclaims and numerous affirmative defenses against GBI, several of which are the subject of GBI's pending motions to strike and dismiss.

## DISCUSSION

### A. Motion to Strike Counterclaims

GBI argues that Defendants' second and third counterclaims—"Intentional Interference with Economic Relations" and "Unfair and Deceptive Trade Practices," respectively—arise out of GBI filing this lawsuit, and thus violate Oregon's statute limiting Strategic Lawsuits Against Public Participation ("anti-SLAPP statute").

Oregon's anti-SLAPP statute, ORS § 31.150, "creates an expedited procedure for dismissal of certain nonmeritorious civil case without prejudice at the pleading stage." *Neumann v. Liles*, 358 Or. 706, 723 (2016).[3] An anti-SLAPP analysis proceeds in two steps. First, the court must first determine whether the party moving to strike "has met its initial burden to show that the claim against which the motion is made arises out of one or more protected activities described in ORS 31.150(2)." *Plotkin v. State Accident Ins. Fund*, 280 Or. App. 812, 815 (2016) (quotation marks omitted). If that burden is met, the opposing party must "establish that [it] will prevail on the claim by presenting substantial evidence to support a *prima facie* case." *Id.* (quotation marks omitted). If, however, the anti-SLAPP motion challenges only the legal sufficiency of a claim, this second step changes: "a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned*

---

[3] Federal courts may apply the protections of state anti-SLAPP statutes in circumstances such as this one. *See, e.g.*, *Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010) (explaining that a federal court may entertain an anti-SLAPP motion to strike "in connection with state law claims"); *see also Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 63 F. Supp. 2d 1127, 1130 (N.D. Cal. Sept. 1, 1999) (holding that a federal court may apply an anti-SLAPP statute to state law claims asserted pendent to federal question claims); *In re Bah*, 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) (citing favorably *Globetrotter*'s holding).

*Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018); *see also Dossett v. Ho-Chunk, Inc.*, 472 F. Supp. 3d 900, 909-10 (D. Or. 2020) (applying *Planned Parenthood* framework to a motion to strike brought under Oregon anti-SLAPP statute).

With respect to the first step of the analysis, GBI argues—and Defendants do not dispute—that the claim against which the motion is made arises out of one or more of the protected activities listed in ORS § 31.150(2), namely statements submitted for a judicial proceeding. *See* ORS § 31.150(2)(a). The parties also do not dispute that because GBI challenges only the legal sufficiency of Defendants' counterclaims, the second step of the anti-SLAPP analysis should employ the Rule 12(b)(6) standard. Thus, the parties' primary dispute is whether Defendants' counterclaims survive that standard.

The Court begins with Defendants' second counterclaim. To establish a claim for intentional interference with economic relations, Defendants must prove:

> (1) the existence of a professional or business relationship . . . ;
> (2) intentional interference with that relationship or advantage; (3) by a third party; (4) accomplished through improper means or for an improper purpose; (5) a causal effect between the interference and the harm to the relationship or prospective advantage; and
> (6) damages.

*Allen v. Hall*, 328 Or. 276, 281 (1999) (en banc). Here, Defendants allege that by filing the pending lawsuit, GBI intentionally interfered with a licensing agreement between GGL and Green Certifications and intended to create "disagreement and discontent" between those parties. The Court agrees with Defendants that the "improper means or improper purpose" element of the *Allen* test includes, among other conduct, initiating unfounded litigation. *See Top Serv. Body Shop, Inc., v. Allstate Ins. Co.*, 283 Or. 201, 210 n.11 (1978) (en banc).

GBI asserts—and Defendants do not dispute—that a party opposing an anti-SLAPP motion in federal court must overcome substantive defenses, including the litigation privilege. The Court agrees. *See Cagle v. Sattler as trustee of Toni Jean Reitman Revocable Living Tr.*, 761 F. Supp. 3d 1357, 1364 (D. Or. 2025) (collecting cases). The litigation privilege extends to statements made during or incidental to judicial and quasi-judicial proceedings. *Id.* This privilege, however, is not absolute. "An actor's conduct is so egregious as to be deprived of the protections of the absolute privilege when that conduct satisfies the elements of [unfounded litigation]."[4] *Mantia v. Hanson*, 190 Or. App. 412, 429 (2003). Thus, the dispositive question is whether Defendants can show, as a matter of law, the elements of unfounded litigation. *Id.* As set forth in *Mantia*, these elements are:

> (1) the plaintiff in the antecedent proceedings lacked probable cause to prosecute those proceedings; (2) the primary purpose of those proceedings was something other than to secure an adjudication of the claims asserted there; and (3) the antecedent proceedings were terminated in favor of the party now asserting the tortious interference claim.

*Id.* (citing *Alvarez v. Retail Credit Ass'n of Portland*, 234 Or. 255, 259-60 (1963) (en banc); Restatement (Second) of Torts (1977) §§ 653, 674. Of greatest importance here is the third prong, which requires the existence of antecedent proceedings that terminated in Defendants' favor. In *Mantia*, the court held that the legal sufficiency of a tortious interference claim depended on a condition that had not yet occurred—that the antecedent proceedings were terminated in favor of the party asserting the interference claim. *Id.*; *see also Too Marker Prods., Inc. v. Creation Supply, Inc.*, 911 F. Supp. 2d 1114, 1117 (D. Or. 2012) (applying *Mantia* to hold

---

[4] In *Mantia*, the court used the phrase "wrongful initiation" but then transitioned to using the phrase "unfounded litigation." *See* 190 Or. App. at 429. To use consistent terminology and avoid confusion, the Court here uses only the phrase "unfounded litigation."

that "Plaintiffs' actions that allegedly gave rise to Defendant's Counterclaim for Tortious Interference are not actionable in the absence of an actual prior adjudication that Plaintiffs interfered with Defendant's business relationships with [other companies]"). In short, a claim brought by a plaintiff is not "unfounded" as a matter of law—and thus is protected by litigation privilege—if there is no antecedent adjudication finding in the defendant's favor. Defendants do not allege any antecedent adjudication in their favor. Thus, on the facts alleged, Defendants' second counterclaim for intentional interference with economic relations fails to state a claim. The Court strikes this counterclaim without prejudice.

The Court next turns to Defendants' third counterclaim, unfair and deceptive trade practices. This counterclaim largely repeats the allegations made regarding the previous counterclaim, intentional interference. Relevant to the third counterclaim is Defendants' allegations that GBI was aware of litigation between GGL and Green Certifications in the Los Angeles Superior Court and "instructed its attorneys to attend status conferences and to track the case through the Los Angeles Superior Court website." Defendants further allege that although the licensing agreement between GGL and Green Certifications was confidential, GBI was able to acquire the privileged key terms "by attending various status conferences during 2022 and 2023 where the attorneys for the parties to the litigation discussed the status of settlement and [the] Licensing Agreement." Defendants, however, do not allege that these status conferences were sealed or that attendance by GBI attorneys was otherwise procedurally improper. Nor do Defendants cite any authority to support their argument that GBI filing a lawsuit in response to information it learned at these conferences constitutes "unlawful and deceptive trade practices" or falls under an exception to the litigation privilege. Accordingly, the

PAGE 9 –  ORDER

Court agrees with GBI that the litigation privilege also applies to this counterclaim and strikes it without prejudice.

## B.  Motion to Strike Certain Affirmative Defenses

GBI argues that Defendants' negligence-based affirmative defenses are inappropriate because GBI's claims concern trademark infringement and intentional interference, and the only alleged harms are economic losses. GBI further asserts that negligence claims would be barred under the economic loss rule because both parties allege solely economic loss.

Defendants respond that their affirmative defenses are not "immaterial and impertinent" because those defenses "all bear materially on the same premise: that it was negligent for [GBI] to delay so long in enforcing the 2010 Settlement Agreement without notifying any of the parties it intended to enforce it against." Defendants argue that the Court should allow them to maintain their affirmative defenses at this early stage of the litigation because these defenses would not prejudice GBI. Defendants, however, do not respond to GBI's arguments that its claims do not sound in negligence and that the parties allege solely economic loss.[5] Nor do Defendants offer any legal authority for their position that a motion to strike on grounds of immateriality should be denied just because an affirmative defense would allegedly not prejudice the movant. Generally, the failure to respond to an argument on its merits is grounds for deeming that argument abandoned or conceded. *See Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (collecting cases holding that a party concedes an argument by failing to respond to it); *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *4 (N.D. Cal. Feb. 19, 2013) ("The failure to respond amounts to a concession."). Thus, the Court finds that

---

[5] Indeed, Defendants concede that their defenses may be redundant, and that the discussion of how well-founded and related to GBI's underlying claims the affirmative defenses may be is "immaterial." Defendants, however, offer no legal authority in support of this position.

Defendants effectively concede that these affirmative defenses are immaterial. Accordingly, the Court strikes them.

### C. Plaintiff's Motion to Dismiss First Counterclaim Under Rule 12(b)(6)

GBI moves to dismiss Defendants' breach of contract counterclaim. The parties do not dispute that Oregon law governs this counterclaim and that under Oregon law, a party must show the following to succeed on a breach of contract claim: "(1) the existence of a contract; (2) the relevant contract terms; (3) that the [claimant] fully performed and did not breach the contract; and (4) that the [opposing party] breached the contract terms resulting in damage to the [claimant]." *Matchniff v. Great Nw. Ins. Co.*, 224 F. Supp. 3d 1119, 1124 (D. Or. 2016) (citing *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570 (1996)).

Before the Court addresses the merits of GBI's motion to dismiss, however, the following background may be helpful. Plaintiff, GBI, asserts a breach of contract claim against Defendants, alleging that Defendants violated the terms of the 2010 Settlement Agreement. *See* ECF ¶¶ 46-50. GBI, however, does not appear to have formed a contract with either Peacock or GGL.[6] GBI appears to have signed the 2010 Settlement Agreement only with GG International—which, as noted, is no longer a party in this case. Defendants, however, have not moved to dismiss GBI's breach of contract claim. Instead, they assert a counterclaim based on the same purported contract upon which GBI's claim is grounded. Specifically, Defendants allege that GBI

---

[6] As noted above, Peacock signed the Settlement Agreement solely in his capacity as the then-CEO of GG International, not in his personal capacity.

disregarded a notice provision in the 2010 Settlement Agreement that entitled Defendants to receive written notice and an opportunity to cure any alleged acts of infringement.[7]

In its motion to dismiss this counterclaim, GBI makes two arguments. First, GBI argues that Defendants fail to allege that Defendants were either a party to or an intended beneficiary of that agreement and the accompanying Consent Decree. Second, GBI argues that even if Defendants *could* bring a claim to enforce the Settlement Agreement, Defendants fail to allege all the elements of a breach of contract under Oregon law. Specifically, GBI argues that Defendants failed to allege the third element of a breach of contract claim: that the claimant fully performed and did not breach the contract at issue.

Defendants respond that if GBI can assert a breach of contract claim against them to enforce the 2010 Settlement Agreement (to which Defendants were not parties) against Defendants, Defendants should be able to bring a breach of contract counterclaim against GBI alleging breach of that same agreement. The Court, however, follows the age-old maxim that two wrongs do not make a right. *See Gray v. Mississippi*, 481 U.S. 648, 663 (1987) (applying the "well-worn adage that 'two wrongs do not make a right'"); *see also Winding Creek Solar LLC v. Peterman*, 932 F.3d 861, 865 (9th Cir. 2019). The Court does not find persuasive Defendants' argument that they should be able to assert a breach of contract claim to enforce a contract to which they are not a party (or even an intended third-party beneficiary) just because the opposing party has done so.

The Court turns to Plaintiff's assertion that Defendants have not alleged one of the elements of breach of contract. The Court agrees with GBI that Defendants did not allege

---

[7] Defendants also make this point in their eleventh, fourteenth, and fifteenth affirmative defenses. The argument GBI did not provide Defendants with required written notice and an opportunity to cure is more appropriately raised as an affirmative defense than a counterclaim.

anywhere in their counterclaims that Defendants either fully performed their obligations under the contract at issue and did not themselves breach the purported contract. Accordingly, the Court dismisses without prejudice this counterclaim. If the Court has misunderstood the parties' positions or the procedural posture as related to this counterclaim, Defendants may replead this counterclaim.

## CONCLUSION

The Court GRANTS GBI's Motion to Strike Second and Third Counterclaims and Certain Affirmative Defense and Motion to Dismiss, ECF 62. The Court dismisses without prejudice Defendants' counterclaim for breach of contract and strikes without prejudice Defendants' counterclaims alleging intentional interference with economic relations and unfair and deceptive trade practices. The Court also strikes without prejudice Defendants' second, third, fourth, and tenth affirmative defenses. Defendants may amend their counterclaims and affirmative defenses not later than two weeks from the date of this Order.

**IT IS SO ORDERED**.

DATED this 19th day of May, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge