**Daniel P. Larsen**, OSB No. 943645
E-mail: dlarsen@buchalter.com
**David A. Bernstein**, OSB No. 235633
E-mail: dbernstein@buchalter.com
**BUCHALTER,** A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205
T (503) 226-1191

**Thomas J. Speiss, III** (*pro hac vice* admission)
E-mail: tspeiss@swlaw.com
Snell & Wilmer L.L.P.
350 S. Grand Avenue, Suite 310
Los Angeles, CA 90071-3420
T (213) 929-2635

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **GREEN BUILDING INITIATIVE, INC.**, an Oregon non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>**GREEN GLOBE INTERNATIONAL, INC.**, a Delaware corporation; **STEVEN R. PEACOCK**, an individual residing in California; **GREEN GLOBE LIMITED**, a company of the United Kingdom; **GREEN CERTIFICATIONS, INC.**, a California corporation; and, DOES 1-10, inclusive,<br><br>Defendants. | Case No. 3:24-cv-00298-SI<br><br>**RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL** |

Page 1    RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND
         PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4

Counsel for Plaintiff Green Building Initiative, Inc. ("GBI"), on behalf of themselves and GBI,[1] respectfully submit the following Response to the Court's October 27, 2025 Order to Show Cause ("OSC", ECF 87). This Response is supported by the Declarations of David A. Bernstein, Daniel P. Larsen, and David Elkanich.

## INTRODUCTION

Attorney David Bernstein ("Mr. Bernstein") is the drafter and signer of the offending Reply filed in support of GBI's Motion for Interim Attorney Fees ("Fee Reply"). Mr. Bernstein admits that he alone, and not GBI or GBI's other attorneys, is responsible for the two hallucinated citations contained in the Fee Reply. Unlike other cases in which attorneys were sanctioned for misusing generative artificial intelligence ("AI"), Mr. Bernstein did not intend to use the application, Microsoft Copilot, to research case law for the Fee Reply. Instead, Mr. Bernstein intended to use it for "wordsmithing" purposes only. Mr. Bernstein was not aware, until receiving notice of the OSC, that Microsoft Copilot had inserted any cases during the editing process.

The purpose of informing the Court of how the error occurred is not to excuse Mr. Bernstein's conduct. Mr. Bernstein fully acknowledges that he failed to carefully review the Fee Reply and that, by submitting a filing containing fictitious cases, he violated Rule 11(b)(2). Mr. Bernstein is beyond remorseful for using Microsoft Copilot for editing purposes without a better understanding of its potential for hallucination and for not conducting a full review of the final product before filing the Fee Reply with the Court. Mr. Bernstein is deeply apologetic to the

---

[1] As the Court will see below, co-counsel, Tom Speiss and his firm Snell & Wilmer, played no role in the submission of the subject brief. As such, Buchalter agreed to submit this brief as a complete response to the Court's order.

Page 2   RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4

Court for wasting its time, as well as to GBI and its other attorneys for the negative and public[2] consequences of his actions.

GBI, attorney Tom Speiss and his firm, Snell & Wilmer, should *not* be sanctioned. They were completely unaware of Mr. Bernstein's use of AI in this matter, they were not responsible for drafting or preparing the subject brief. *Declaration of Daniel Larsen,* ¶ 4.

Mr. Bernstein and Buchalter propose the following sanctions, which they fully intend to do even if not ordered by the Court:

- Reimburse GBI and/or write off any attorney's fees billed in connection with the Fee Reply.

- For obvious reasons, GBI will not be charged for any of the work associated with responding to the Show Cause Order.

- Buchalter will continue to educate its attorneys and staff on the misuse of Generative AI, and will evaluate what additional safeguards may be implemented to prevent misuse. Buchalter has measures in place to block access to certain unauthorized AI products and services from firm computers and will continue to evaluate and implement additional security measures.

- Buchalter will reimburse Defendant for attorney's fees reasonably incurred in connection with the citation of hallucinated cases (if any – this was a reply brief and there was no hearing).

- Mr. Bernstein agrees to take additional CLEs on Generative AI.

---

[2] Both the Oregonian and ABA Journal have published and discussed the Court's Show Cause Order. The articles specifically named GBI, along with its attorneys David A Bernstein, Daniel P. Larsen, and Thomas J. Speiss.

Page 3   RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4

- Buchalter and Mr. Bernstein agree to donate to the Campaign for Equal Justice the proposed sum of $5,000.

## DISCUSSION

### A. Relevant Background

On February 21, 2025, GBI moved to strike defendants' counterclaims of Interference with Economic Relations and Unfair and Deceptive Trade Practices under Oregon's anti-SLAPP statute, ORS 31.150 et seq. ECF 62. After thorough briefing, the Court agreed with GBI and granted its anti-SLAPP motion on May 19, 2025. ECF 72.

On July 29, 2025, GBI filed a Motion for Interim Attorney Fees (ECF 75) based on ORS 31.152(3), which provides that the movant who "prevails on a special motion to strike made under ORS 31.150 *** shall be awarded reasonable attorney fees and costs." On September 15, 2025, defendants filed their response to the Motion for Interim Attorney Fees. ECF 81. Defendants argued that the Motion for Attorney Fees was premature and should be stayed until GBI's case in chief is determined on its merits. *Id.*

On October 14, 2025, GBI, through Mr. Bernstein, filed the Fee Reply in support of the request for interim attorney fees. ECF 85. The Fee Reply contained two hallucinated cases in support of the proposition that federal courts applying Oregon's anti-SLAPP statute have consistently held that fee awards are appropriate "immediately following resolution of the special motion to strike." *Id.*

It is undisputed that the Fee Reply contains two hallucinated cases. As evidenced by his supporting declaration, Mr. Bernstein is a senior associate at Buchalter, and was tasked with researching and drafting the Fee Reply. *Bernstein Dec.,* ¶ 2; *Larsen Dec.* ¶ 4. In doing so, he performed legal research on Westlaw. He included some of the authorities he found in the Fee Reply brief. *Bernstein Dec.* ¶ 3.

Page 4   RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4

Without telling anyone at all, Mr. Bernstein copied sections of his draft brief into Microsoft Copilot for purposes of refining it. *Id.* ¶¶ 4-6. He did not intend to use Copilot for legal research, and he did not notice that a revised portion of the brief generated by Copilot had inserted two new case cites (the two hallucinated cases). *Id.* ¶¶ 4-5. He merely copied portions of his brief into Copilot and entered a prompt to instruct it to improve the writing in the brief. *Id.* ¶¶ 5-6. Carelessly, without reviewing the output from Copilot before pasting the revised language back into the brief, Mr. Bernstein then sent the draft brief to Dan Larsen and Tom Speiss. He did not inform them that he had used Copilot on the brief at all. *Id.,* ¶ 6, *Larsen Decl.,* ¶ 6.

Dan Larsen, has worked with Mr. Bernstein for more than two years on several matters, and has found his prior work to be reliable and high quality. Mr. Bernstein has been practicing law for approximately ten years. He came to Buchalter from a large law firm in Ohio, and has been a trusted associate for many attorneys at Buchalter. *Larsen Decl.*, ¶ 2. Given Mr. Larsen's prior experience working with Mr. Bernstein, and his opinion that he is a high quality lawyer, as well as the fact that Mr. Bernstein did not inform Mr. Larsen of his use of AI, Mr. Larsen did not independently research and review the cases cited by Mr. Bernstein in the Fee Reply. *Larsen Dec.*, ¶¶ 5-6. Similarly, Mr. Speiss would have had no reason at all to question or independently verify the case citations provided by Mr. Bernstein. *Id.*

Buchalter has a strict policy regarding the use of generative AI, which Mr. Bernstein violated in several respects. Every Buchalter attorney has been informed of Buchalter's AI policy multiple times, and Buchalter employs ongoing, frequent efforts to inform its attorneys of its AI policy and of the risks associated with the use of generative AI. Buchalter's AI policy is prominently displayed and available to all employees on Buchalter's internal "intranet" website. As part of Buchalter's technology committee, it has an "AI Subcommittee" which, among other

Page 5   RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4

things, vets AI products, researches the most recent developments in methods of risk mitigation, ethical rules, and uses of AI in the legal profession. *David Elkanich Decl.*, ¶ 4.

Under Buchalter's AI policy, attorneys are prohibited from using *any* generative AI technology unless it is a product specifically approved by Buchalter's AI committee. Also, attorneys using generative AI are, among other things, required to (a) inform all supervising attorneys that AI has been used, (b) comply with all ethical rules, and (c) independently confirm the accuracy of all AI output. *Id., ¶ 5.* Furthermore, whether or not using generative AI, Buchalter attorneys (as with all attorneys) should review briefs and other court filings, and confirm the accuracy of case citations, before filing them with the court. *Id.* It appears that Mr. Bernstein violated all of these safeguard policies, any one of which could have prevented the current situation.

Mr. Bernstein fully acknowledges that he should have reviewed the entire Fee Reply. If he had done so, Mr. Bernstein would have realized that Copilot inserted two hallucinated citations, especially since *Page v. Parsons* is an Oregon Court of Appeals decision frequently cited in anti-SLAPP cases. *Bernstein Dec.* ¶ 5.

On October 27, 2025, this Court denied without prejudice GBI's interim motion for attorney fees. ECF 87. In addition, the Court issued an Order to Show Cause as to why it should not issue sanctions on both GBI and its counsel for using fake citations in violation of Rule 11(b)(2). *Id.* at 4-6.

**B.    Rule 11 Sanctions Standard**

Fed. R. Civ. P 11(b)(2) provides that an attorney, by signing, filing, or submitting any paper to the court, "certifies to the best of the [attorney's] knowledge, information and belief, formed after an inquiry reasonable under the circumstances":

Page 6   RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law

If the Court finds a violation of Rule 11(b), it "may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Rule 11(c)(2). "Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." *Id*. The Court "must not impose a monetary sanction *** against a represented party for violating Rule 11(b)(2)". Rule 11(c)(5).

Sanctions for violating Rule 11(b) may be imposed by motion or on the court's own initiative. Fed. R. Civ. P. 11(c)(2)-(3). "[U]nlike the situation in which an opposing party moves for Rule 11 sanctions – there is no 'safe harbor' in the Rule allowing lawyers to correct or withdraw their challenged filings" when a court considers issuing sanctions sua sponte. *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115-16 (9th Cir. 2001) (citation omitted). As a result, sua sponte sanctions under Rule 11 "will ordinarily be imposed only in situations that are akin to a contempt of court." *Id*. at 1116 (emphasis in original, citation omitted).

**C.     Sanctions**

Here, GBI's attorneys fully acknowledge that Mr. Bernstein violated Rule 11(b)(2) by signing and filing a document that contained the fake citations. As indicated in *Mata v. Avianca, Inc.*, 67 F. Supp. 3d 443, 461 (S.D.N.Y. 2023), a case cited in the Order to Show Cause, "a fake opinion is not 'existing law'". Because it is undisputed that Mr. Bernstein violated Rule 11(b)(2), the Court may impose an appropriate sanction.

"The court has significant discretion in determining what sanctions, **if any,** should be imposed for a violation, subject to the principle that the sanctions **should not be more severe than reasonably necessary to deter** repetition of the conduct by the offending person or comparable conduct by similarly situated persons." Fed. R. Civ. P. 11 Advisory Committee Notes to 1997

Page 7    RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4

Amendment (Emphasis added); Rule 11(c)(4); *Zambrano v. City of Austin*, 885 F.2d 1473, 1480 (9th Cir. 1989)("any sanction imposed must be proportionate to the offense and commensurate with principles of restraint and dignity inherent in judicial power. This last principle includes a responsibility to consider the usefulness of more moderate penalties before imposing a monetary sanction.") "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution. Such sanctions can have an unintended detrimental impact on an attorney's career and personal wellbeing." *Conn v. Borjorquez,* 967 F. 2d 1418, 1421 (9th Cir. 1992).

As outlined above, Mr. Bernstein and Buchalter fully intends to take the following steps regardless of whether the court chooses to exercise its discretion to impose sanction:

- Reimburse GBI and/or write off any attorney's fees billed in connection with the Fee Reply.

- For obvious reasons, GBI will not be charged for any of the work associated with responding to the Show Cause Order.

- Buchalter will continue to educate its attorneys and staff on the misuse of Generative AI, and will evaluate what additional safeguards may be implemented to prevent misuse. Buchalter has already implemented measures to block access to certain unauthorized AI products and services from firm computers and will continue to evaluate and implement additional security measures.

- Buchalter will reimburse Defendant for attorney's fees reasonably incurred in connection with the citation of hallucinated cases (if any – this was a reply brief and there was no hearing).

- Mr. Bernstein agrees to take additional CLEs on Generative AI.

Page 8   RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4

- Buchalter and Mr. Bernstein agree to donate to the Campaign for Equal Justice the proposed sum of $5,000.

For the following reasons, the proposal is proportionate to the violation:

1. *There is no intent to use generative AI for legal research and Mr. Bernstein fully takes responsibility for his conduct.*

A vast majority of the reported cases that sanctioned attorneys for misusing AI occurred when the attorney intentionally relied on generative AI to conduct legal research. For example, in *Mata,* the attorney relied on ChatGPT to perform legal research. 678 F. Supp. 3d at 451. In *Benjamin v. Costco Wholesale Corp.*, No. 2:24-cv-7399 (LGD), 2025 U.S. Dist. LEXIS 78895 at 9 (E.D.N.Y. Apr. 24, 2025), the attorney used generative AI to draft her reply brief and did not review it prior to filing. (The attorney in *Benjamin* was ordered to pay $1,000 in monetary sanctions.) In those circumstances, the attorneys should have reviewed the cases cited because Generative AI's tendency to hallucinate is well known. Here, Mr. Bernstein did not intend to use Copilot in such a fashion. Instead, Mr. Bernstein was using Copilot for editing purposes and was unaware that Copilot inserted citations to the Fee Reply.

Moreover, in many of the reported cases, the attorney tried to deny that the citations were fake. For example, in *Mata,* the Court pointed out the attorneys' persistent denial that the citations were fake and that the outcome would have been different if the attorneys had simply come clean when the issue was first raised:

> The narrative leading to sanctions against Respondents include the filing of the March 1, 2023 submission that first cited the fake cases. But if the matter had ended with Respondents coming clean about their actions shortly after they received the defendant's March 15 brief questioning the existence of the cases, or after they reviewed the Court's Orders of April 11 and 12 requiring production of the cases, the record now would look quite different. Instead, the individual Respondents doubled down ***

Page 9   RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4

*Id.* at 449. The Court in *Mata* ordered the attorneys to send letters to the affected parties, e.g., their client and the judges falsely identified as the authors of the hallucinated opinions, as well as pay $5,000 in monetary damages. Here, Buchalter and Mr. Bernstein fully and promptly acknowledge Mr. Bernstein's judgment error in using Copilot for editing, and in not thoroughly reviewing the Fee Reply before filing it with the Court. While Mr. Bernstein did not intend to use Copilot for research purposes, he certainly understands this Court's concerns given the recent rise of lawyers misusing generative AI. Mr. Bernstein is sincerely apologetic and regretful that he has wasted the Court's time and resources and distracted everyone involved from the case at hand. *Bernstein Decl.,* ¶ 8.

The facts here are akin to *Dastou v. Holmes,* 2025 Mass. Super. LEXIS 211 (June 25, 2025). In *Dastou,* the attorney intended to use ChatGPT to check spelling, grammar, and to format her jury instructions and motions in limine. *Id.* at *3. The attorney explained that she was unaware ChatGPT had altered the pleadings beyond those editing functions. The attorney also proposed and implemented sanctions of not charging her client any attorney fees associated with the offending pleadings. The Court in *Dastou,* found that the attorney was sincere in her apology, issued the additional sanction of completing a CLE course on how to draft jury instructions. *Id.* *4.

Another comparable recent case is *In re Richburg,* 2025 Bankr. LEXIS 2115 (D.S.C. Aug. 27, 2025) in which the attorney used Microsoft Copilot in his motions. Unlike the present case, the attorney in *Richburg* intended to use Copilot to research and draft his motions. Like the case at hand, the attorney in *Richburg* was also contrite and remorseful when the Court pointed out the fake citations in its Order to Show Cause. The *Richburg* court ordered that the attorney attend three

Page 10  RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4

hours of additional CLE with at least two of those hours on the ethical use of AI in legal practice. *Id.* at *16-17.

Finally, in *Vita Law Offices v. Lockridge Grindal Nauen PLLP,* 1:25-cv-23576-RS (S.D. Fl. 2025), the attorney also used Microsoft Copilot for editing purposes only. However, unbeknownst to the attorney, Copilot inserted false quotes from cases. *Id.* at ECF 28. The attorney fully acknowledged the error and recognized that "the responsibility of accuracy lies with him and not a tool." *Id.* at 3. The attorney proposed to undertake a minimum of four CLEs "on topics such as use of AI in legal practice, Legal Ethics, and Federal Practice, or a combination thereof." The district court in *Vita Law Offices* adopted the attorney's proposal. *Id.* at ECF 30.

2. *Although the citations are hallucinated, the argument is not frivolous*

It is worth pointing out that although the citations were fake, federal courts have awarded attorney fees immediately following the granting of the anti-SLAPP motion instead of waiting until the conclusion of the case. For example, in *Englert v. Macdonell,* 2009 U.S. Dist. LEXIS 60538, 6:05-cv-01863-AA (D. Or 2009), Judge Ann Aiken granted the anti-SLAPP motion *in part* on May 7, 2009, and awarded attorney fees under ORS 31.152(3) on July 10, 2009. The case was not fully resolved until September 2012. As such, Mr. Bernstein's arguments had merit.

3. *Mr. Bernstein is already deterred from future similar conduct*

There have already been huge consequences for Mr. Bernstein's conduct. As Mr. Bernstein attests, this has been a deeply humbling and publicly humiliating experience. *Bernstein Decl.,* ¶ 8. Mr. Bernstein is committed to being part of the solution. As an initial rehabilitative step, Mr. Bernstein intends to take additional CLEs on proper usage of generative AI tools. Mr. Bernstein also intends to educate other attorneys on the potential unintended consequences of using AI. *Id.,* para 11.

Page 11   RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4

Buchalter already had policies in place to avoid this very situation and is committed to additional training for its attorneys and staff to ensure their full compliance with the firm's AI policies. *Elkanich Decl.,* ¶¶ 3-6.

If the Court deems that the self-imposed steps by Mr. Bernstein and Buchalter to be insufficient, they respectfully request that the Court inform them of the specific form of sanctions under consideration so that they are provided with due process notice and an opportunity to be heard. *Simmerman v. Corino,* 27 F. 3d 58, 64 (3rd Cir. 1994) (due process requires notification of the "form of sanctions under consideration"); *Cole v. United States Dist. Court,* 366 F.3d 813, 821 (9th Cir. 2004).

**Under no circumstances should GBI, Tom Speiss, or Snell & Wilmer be sanctioned.** They had no knowledge or involvement in Mr. Bernstein's use of AI, they were not responsible for drafting or filing the brief, and Buchalter respectfully requests that the Court's order specifically acknowledge as much so that any public reporting of this matter clears their names.

## CONCLUSION

Buchalter and Mr. Bernstein take full responsibility and again sincerely apologize to the Court, the parties, and all counsel for this error. Buchalter and Mr. Bernstein accept whatever sanction the Court deems appropriate.

DATED this 10th day of November, 2025.

BUCHALTER, A Professional Corporation

/s/ Daniel P. Larsen
Daniel P. Larsen, OSB No. 943645
Email: dlarsen@buchalter.com
David A. Bernstein, OSB No. 235633
Email: dbernstein@buchalter.com

Attorneys for Plaintiff

Page 12  RESPONSE TO ORDER TO SHOW CAUSE BY PLAINTIFF AND PLAINTIFF'S COUNSEL

BUCHALTER
A Professional Corporation
805 SW Broadway, Suite 1500
Portland, OR 97205-3325
Telephone: 503.226.1191

BUCHALTER 106414451v4